UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| POLSINELLI PC, | ) |
| | ) |
| Plaintiff, | ) Case No. 13-cv-3676 |
| v. | ) |
| | ) Judge John W. Darrah |
| GENESIS BIOSCIENCES, INC. and | ) |
| CKM HOLDINGS, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Polsinelli PC ("Polsinelli") has brought this action to recover unpaid legal fees against Defendants Genesis Biosciences, Inc. ("Genesis") and CKM Holdings, Inc. ("CKM"). Defendants have moved to transfer this case to the Northern District of Georgia, pursuant to 28 U.S.C. § 1404(a).

### BACKGROUND

For purposes of a motion to transfer, all well-pleaded allegations in the complaint are accepted as true unless controverted by affidavit. *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 900 (N.D. Ill. 2001). Polsinelli is a large, Missouri-based law firm with offices nationwide, including a Chicago office and a recently opened Atlanta office. Genesis is a Georgia limited liability corporation, and CKM is Delaware corporation; both have their principal place of business in Lawrenceville, Georgia. This dispute centers on legal work performed by Polsinelli for Defendants on a variety of matters, including corporate, employment, environmental and litigation issues. This work was performed primarily by Polsinelli from its Chicago office, but attorneys in its Kansas City, Phoenix, and St. Louis offices also were involved. (Compl. ¶¶ 1-4, 8.)

The history of the parties goes back to 2001, when Conrad Mielcuszny, a Wisconsin resident at the time, retained attorney Anthony Nasharr, who was, at that time, working for a different Chicago law firm.  (*See* Pl's Resp. Br., Exh. A, Nasharr Declaration ("Nasharr Decl.") ¶ 4.)  Nasharr represented Mielcuszny in his creation of his company Biotal Technologies, LLC ("Biotal"), a Wisconsin company, and continued to work on Biotal matters until 2012.  (*Id.* ¶¶ 4, 6.)  Between 2001 and 2007, Mielcuszny frequently visited and conferred with Nasharr in the Chicago area.  (*Id.* ¶ 7.)  In approximately 2005, Mielcuszny moved, along with his business operations of Biotal, from Wisconsin to the Atlanta, Georgia area.  (*Id.* ¶ 8.)  In 2006, Nasharr joined the law firm of Polsinelli as a shareholder and brought Mielcuszny's business with him.  (*Id.* ¶ 5.)

In 2007, Mielcuszny requested that Nasharr and Polsinelli represent him in his business's acquisition of Genesis Technologies International, Inc. ("Genesis Technologies"), a Georgia company.  (*Id.* ¶ 9.)  Nasharr performed all the legal services for Mielcuszny and Biotal from his Chicago law office.  In a 2008 "Executive Summary" prepared about Biotal for potential lenders, Nasharr was described as Biotal's "general counsel" and listed in Chicago.  (*Id.* ¶¶ 13-14.)

At Mielcuszny's request, Nasharr and his Polsinelli colleagues incorporated a new company that was wholly owned by Mielcuszny, Defendant CKM, in order to purchase Genesis Technologies; Nasharr likewise performed that legal work from his Chicago office.  (*Id.* ¶ 15.)  A Polsinelli attorney from Kansas City drafted the acquisition documents.  (Defs.' Reply Br., Exh. A, Nasharr Dep. 32:24-33:5.)  The closing of the acquisition took place in Lawrence, Georgia in June 2008, which Nasharr attended.  (Nasharr Decl. ¶ 16.)  After the acquisition, Nasharr provided the legal services, from Chicago, to change the name of the company to

Genesis. (*Id.* ¶ 17.) Nasharr, along with several other Chicago lawyers, continued to provide legal services for Defendants on a variety of matters. Nasharr visited Genesis's headquarters in Georgia twice. (*Id.* ¶ 18.)

After the acquisition, Mielcuszny voiced concerns about the equipment and facilities purchased from Genesis Technologies, particularly about two large, pressurized fermentation tanks that had not been completed at the time of closing. (*Id.* ¶¶ 24-25.) In late 2009, Mielcuszny conferred with Nasharr about defenses to avoid payment on two promissory notes that were guaranteed by him as part of the financing of the purchase of Genesis Technologies. The promissory notes, which totaled $2 million, were owed to the former principals of Genesis Technologies, John Kubiak and Lee Hanson. (*Id.* ¶ 21.) As a result, Nasharr and two Chicago Polsinelli litigators, Anthony Porcelli and Paula Kim, began a factual investigation and legal analysis of possible defenses that continued through 2010; the focus of that work then turned to negotiations in June 2010. Mielcuszny met with the Polsinelli attorneys twice in Chicago in 2010. (*Id.* ¶¶ 26-27; *see also* Porcelli Decl. ¶¶ 5-7.) Thomas Tate of the law firm of Andersen, Tate & Carr P.C. ("Andersen Tate") was retained by Mielcuszny and Genesis to act as local counsel in Georgia, while Polsinelli continued to be the lead attorneys. (Porcelli Decl. ¶ 9.)

After those negotiations failed, Kubiak and Hansen sued Mielcuszny in Georgia state court in February 2011, seeking $2 million for failure to pay on the promissory notes. Mielcuszny engaged Polsinelli, specifically Nasharr and Porcelli, to represent him in defense of that matter, as well as to bring a separate lawsuit against Kubiak and Hansen in Georgia on behalf of CKM. (Nasharr Decl. ¶ 29; Pl's Resp. Br., Exh. B., Porcelli Declaration ("Porcelli Decl.") ¶ 10.) Polsinelli had the lead role on this litigation, the majority of which was conducted

out of the Chicago office. Porcelli made two overnight trips to Georgia, one of which was to argue summary judgment motions, while Kim made one overnight trip to Georgia. (Porcelli Decl. ¶ 7.) Hansen and Kubiak were subsequently awarded summary judgment against Mielcuszny regarding the promissory notes in October 2011. (Porcelli Decl. ¶ 12.)

In approximately September 2011, Defendants stopped paying Polsinelli's legal bills. In approximately late 2011, Polsinelli was informed that Andersen Tate would be taking over as lead counsel. Polsinelli ceased working on Defendants' matters on or about February 28, 2012, and sent the last legal bill to Defendants on or about March 31, 2012. Polsinelli alleges that Defendants owe it approximately $333,003.02, plus interest, for unpaid legal services. (Compl. ¶¶ 18-20.) Polsinelli's Complaint asserts two counts against Defendants; Count I is for breach of contract, and Count II is for *quantum meruit*. Defendants have filed an Answer that asserts affirmative defenses and counterclaims for malpractice and breach of fiduciary duty against Polsinelli.

Defendants have moved to transfer this matter to the Northern District of Georgia, arguing that it is a more convenient venue. Polsinelli was granted leave to file supplemental memoranda, and the matter has been fully briefed.

## LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Therefore, a transfer of venue is appropriate when: (1) venue is proper in both the transferor and transferee courts; (2) a transfer will better serve the convenience of the parties and the witnesses; and (3) a transfer will better

serve the interest of justice. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). The moving party bears the burden of establishing all three elements, including showing that the movant's venue is "clearly more convenient" than remaining in the plaintiff's initial choice of venue. *Body Sci. LLC v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 991 (N.D. Ill. 2012) (quoting *Coffey*, 796 F.2d at 219-20). The decision whether to transfer a case is "committed to the sound discretion" of the district court. *Coffey*, 796 F.2d at 219. As such, the district court will decide a motion to transfer on a case-by-case basis, considering all relevant contextual circumstances within the appropriate statutory framework and making any factual findings that are necessary for determining venue issues. *Id.* (citing 28 U.S.C. § 1404(a) and *In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008)).

## ANALYSIS

### *Venue*

The parties do not appear to dispute that venue is proper in both districts. Defendants are residents of the Northern District of Georgia, and for that reason, venue is proper in that district. *See* 28 U.S.C. § 1391(1)(b). Polsinelli contends that venue is proper in the Northern District of Illinois because most of the work was performed by Chicago-based attorneys working in Polsinelli's Chicago office. *See* U.S.C. § 1391(b)(2). A plaintiff does not need to show that a majority of the events took place in their chosen venue, only that "a 'substantial part' of the events or omissions giving rise to the claim occurred within the forum," which Polsinelli has done. *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 834 (N.D. Ill. 2004) (citing *Pasulka v. Sykes*, 131 F.Supp.2d 988, 994 (N.D. Ill. 2001)). Thus, venue is proper in both districts, and the first element is satisfied.

*Convenience for the Parties and the Witnesses*

The convenience of transferring forums is the most important statutory element of a transfer analysis. *Body Sci.*, 846 F. Supp. 2d at 992 (citations omitted). In weighing the convenience of one forum versus another, courts in this district consider five factors:

> (1) the plaintiff's choice of forum; (2) the *situs* of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums.

*Id.* (citing *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010)). Each of these factors is addressed below.

### Plaintiff's Choice of Forum

A district court grants an automatic degree of deference to a plaintiff's chosen forum for filing a suit such that "unless the balance strongly favors transfer, the plaintiff's choice of forum should not be disturbed." *Bousis v. Marriott Int'l, Inc.*, 47 F. Supp. 2d 1004, 1006 (N.D. Ill. 1999) (citing *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1259 (7th Cir. 1977)). As important as the plaintiff's choice of forum is, it is not absolute and may be neutralized as a factor weighing against transfer. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000) (citation omitted). For example, a plaintiff's choice of forum is entitled to less deference when the forum is not the plaintiff's home or residence. *Moore v. Motor Coach Indus.*, 487 F. Supp. 2d 1003, 1007 (N.D. Ill. 2007). Furthermore, less deference is given "when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the *situs* of material events." *Id.* (citing *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)).

In this case, the three Polsinelli attorneys who performed most of the work on Defendants' legal matters, Nasharr, Porcelli, and Kim, are based in Polsinelli's Chicago office, which is located in the Northern District of Illinois.  However, Polsinelli is a citizen of the state of Missouri, is organized under the laws of Missouri, and has its principal place of business in Kansas City, Missouri.  (Compl. ¶ 2.)  Attorneys from Polsinelli's offices in Kansas City, Phoenix, and St. Louis also worked on the legal matters at issue for Defendants.  (Compl. ¶ 8, 10.)  Furthermore, Polsinelli also has an office in Atlanta in the Northern District of Georgia.  Thus, this factor weighs only slightly against transfer.

## *Situs* of Material Events

The next factor to consider is the *situs* of material events.  Polsinelli argues that the material events occurred in Chicago because the majority of the legal work was performed by the attorneys working in the Chicago office.  Polsinelli further contends that any malpractice claims asserted by Defendants necessarily relate to the work that was done in Chicago.  Defendants contend that the *situs* is in Georgia because the legal work at issue was:  (1) for the acquisition of a Georgia company with facilities only in Georgia and that culminated in agreements governed by Georgia law; and (2) litigation in Georgia relating to that acquisition.  Defendants stress that Nasharr attended the closing of the Genesis acquisition in Georgia and that Porcelli travelled to Georgia to argue the summary judgment motions filed by Kubiak and Hansen.

Because the Genesis acquisition, which was the focus of Polsinelli's work, occurred and closed in Georgia, the *situs* of material events is in Georgia.  Therefore, this factor weighs in favor of transfer.

### Location of Proof

Polsinelli argues that there are case files, billings and other documents located in Chicago that will support its claims of legal services. Courts have recognized that documentary and digital evidence "is readily transferable and transporting it generally does not pose a high burden upon either party." *Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, at *5 (N.D. Ill. Sept. 18, 2009) (citations omitted). Defendants argue that Genesis's facilities are evidence that will need to be inspected as part of Defendants' counterclaims of malpractice in connection with the acquisition and alleged failure by Polsinelli to do proper due diligence. Since Genesis's facilities are located in Georgia, this factor weighs in favor of transfer.

### Convenience of the Parties

In evaluating the convenience to the parties of litigating in one district versus another, a district court considers the parties' "respective residences and their ability to bear the expenses of litigating in a particular forum." *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 776 (N.D. Ill. 1998) (citation omitted). Defendants are located in Georgia and do not have a presence in Illinois. As mentioned above, Polsinelli is a citizen of Missouri and has an office in Atlanta. The burden on Defendants of litigating in Illinois is much greater than the burden on Polsinelli of litigating in Georgia. Therefore, this factor weighs in favor of transfer.

### The Convenience of the Witnesses

The convenience of witnesses is often considered the most important factor in transfer analyses. *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F.Supp.2d 902, 913 (N.D. Ill. 2006). However, the convenience of party witnesses is less important than the convenience of non-party

8

witnesses because party witnesses are expected to appear voluntarily.  *Moore*, 487 F. Supp. 2d at 1007-08.  In making this determination, a district court will "look to the nature and quality of the witnesses' testimony with respect to the issues of the case," with a keen eye towards those persons who will have to physically leave home in order to appear at and prepare for trial.  *Schwarz*, 317 F. Supp. 2d at 836. (citation omitted).

Defendants have identified numerous party and non-party witnesses located in Georgia, including Mielcuszny; Genesis's CFO Mark Furnia; the sellers of the Genesis business, Kubiak, Hanson and Brian Wholley; and the attorneys at Anderson Tate, among others.  Polsinelli has identified as witnesses only its three attorneys located in Chicago, all of which are party witnesses.  Polsinelli argues that the testimony of some of Defendants' witnesses will be duplicative or unnecessary and has taken discovery.  Although Polsinelli vigorously urges this Court to discount Defendants' witnesses, Polsinelli's proposed limitation of relevant evidence is unpersuasive, and it is clear that Defendants have identified non-party witnesses located in Georgia who will be relevant to the issues in the case, including Defendants' counterclaims of malpractice.  Therefore, this factor weighs in favor of transfer.

### *Interest of Justice*

The final factor to consider is whether transferring a matter to another district will better serve the interest of justice.  The speed at which a case will proceed to trial is often considered in evaluating this factor.  *Schwarz*, 317 F. Supp. 2d at 837.  The median time to trial in the Northern District of Georgia is 27.4 months, and the median time to trial in the Northern District of Illinois is 32.2 months.  (*See* Federal Court Management Statistics, Sept. 2013,

http://www.uscourts.gov/Statistics/ FederalCourtManagementStatistics/district-courts-september-2013.aspx.)  Thus, these numbers are slightly better in Georgia.

Courts also will consider whether a forum has a strong desire to resolve a particular dispute such that the venue is "closer to the action."  *Hanley*, 6 F. Supp. 2d at 777 (internal quotation marks and citations omitted).  Here, both forums have a strong interest in the outcome; Illinois has an interest in its lawyers receiving their legal fees, and Georgia has an interest in litigation that affects Georgia businesses.  Considering both the speediness and the respective desires of the forums to resolve this dispute, the interest of justice factor weighs just slightly in favor of Georgia.

Considering all the factors discussed above, Defendants have met their burden of showing that this case should be transferred to the Northern District of Georgia.

## CONCLUSION

Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) [14] is granted.  This case is transferred to the United States District Court for the Northern District of Georgia.

Date:  March 12, 2014

_____
JOHN W. DARRAH
United States District Court Judge