IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| POLSINELLI PC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CASE NO. 1:14-CV-0873-SCJ |
| GENESIS BIOSCIENCES, INC. | ) |
| and CKM HOLDINGS, INC., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S INITIAL DISCLOSURES**

(1) State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.

Plaintiff/Counter-Defendant Polsinelli PC brought this action on claims in contract and *quantum meruit* to recover attorneys' fees. Defendants owe Polsinelli approximately $333,003.20, plus interest, for requested legal services that remain unpaid.

- In late 2007, Conrad Mielcuszny engaged Polsinelli to represent his business, Biotal Technologies LLC, in acquiring Genesis Technologies, Inc. Anthony Nasharr, who has represented Mielcuszny since 2002, recommended to Mielcuszny that a team of experienced corporate merger and acquisition attorneys be assembled to work on the acquisition, which team would be, in part, led by Nasharr and include other Polsinelli attorneys in areas of specialty as needed. Mielcuszny agreed and engaged Polsinelli for the acquisition.

- In order to provide Biotal and Mielcuszny additional corporate protection, Polsinelli formed CKM Holdings, Inc., also 100% owned and controlled by Mielcuszny, to serve as the entity for the acquisition of 100% of the common stock of Genesis Technologies Inc. Mielcuszny was fully informed and consulted on the corporate structuring, and he approved of it.

- Polsinelli represented Mielcuszny in the negotiation of a stock purchase agreement for the acquisition of Genesis Technologies. In June 2008 the common stock purchase was funded and closed, and Genesis Technologies was acquired.

- In late 2007, Polsinelli attorneys learned that Mielcuszny coveted the acquisition of Genesis Technologies because it was offered for sale at the price of $12,000,000, which was substantially below what Mielcuszny believed and understood to be the value of the company. Mielcuszny frequently instructed Polsinelli to take all steps necessary to accomplish the acquisition regardless of any possible legal or business shortcoming implicated in the acquisition.

- From the onset, the three (3) shareholders of Genesis Technologies [John Kubiak, Lee Hanson, Brian Wholley] advised Mielcuszny that they wished to withhold knowledge of the pending sale from most of the managers and employees of the company and that for that reason, Mielcuszny would not be allowed to undertake the sufficient pre-purchase due diligence recommended by Polsinelli regarding the company assets and facilities. Mielcuszny informed his Polsinelli attorneys that these limitations were acceptable to him.

- As a result of his discussions with Polsinelli lawyers regarding the issue, Mielcuszny stated that he would manage the due diligence investigation himself and took the responsibility of engaging third parties who would conduct the limited due diligence, specifically his accountants and consultants. Due to the accepted limitations on the due diligence, a review of the construction of and materials to be used for the two 15,000 liter fermentation tanks was not a subject of the due diligence. Mielcuszny was advised that his acquisition could be

subject to the presence of physical defects at the facilities, nonetheless, Mielcuszny proceeded relying on Seller's representations and warranties pertaining to the equipment at the facility.

- After CKM Holdings, Inc.'s 2008 acquisition of Genesis Technologies, in approximately 2009 it was discovered that the material procured for the construction of the two 15,000 liter fermentation tanks could not be certified for fermentation use under Georgia law.

- The company, by early 2009 renamed "Genesis Biosciences" continued to successfully generate the same or greater sales and revenue after the 2008 acquisition as it had in the years prior to the acquisition.  The company continued to generate approximately $6,500,000 or more in sales per year at all times after June 2008 through early 2012, and Mielcuszny as the sole owner of the company earned and enjoyed significant profits from the business operations of Genesis Biosciences.

- CKM Holdings, Inc., by virtue of the seller-financed portion of the acquisition, was required to make two (2) separate $1,000,000 promissory note payments by June 2010.  As part of the acquisition, Mielcuszny personally guaranteed those Notes, a guaranty which was fully disclosed to him in the weeks prior to the closing, which he had a hand in negotiating, and which was fully accepted by him at the time of the acquisition closing in June 2008.

- In the months prior to the June, 2010 due date of the notes, Mielcuszny decided to use problems he had identified at the facility as a means to avoid payment on the Notes and the guarantees. Mielcuszny tasked Polsinelli to conduct an investigation in order to determine the feasibility of making a claim against Hanson and Kubiak based on various deficiencies Mielcuszny claimed existed at the facilities and to investigate the possibility of a fraud claim against Hanson and Kubiak.  Polsinelli undertook such an investigation at Mielcuszny's request and direction, and provided Mielcuszny with a detailed evaluation of the viability of any claims against Hanson and

Kubiak.

- In early 2011, Hanson and Kubiak filed two (2) separate suits against Mielcuszny based on his default on the Notes and the respective guarantees of the Notes by Mielcuszny. Mielcuszny authorized and directed Polsinelli to bring a separate lawsuit against Hanson and Kubiak on the grounds of breach of representations and warranties in the Stock Purchase Agreement and based on defects and deficiencies discovered post-purchase at the Genesis facilities.

- Mielcuszny's separate counterclaims in the Notes Cases, based on fraud in the inducement, were interposed as defenses to Hanson's and Kubiak's claims for payment on the Notes and the guarantees.

- Polsinelli suggested the retention of the Anderson Tate & Carr firm in Atlanta as local counsel for the then pending litigation. Polsinelli relied on the sound advice and direction of Anderson Tate & Carr attorneys on matters of Georgia practice and procedure.

- Summary judgment was entered in late 2011 against Mielcuszny on the guarantees, and two (2) separate judgments in the aggregate of approximately $2,500,000 were assessed against Mielcuszny.

- In February 2012 the Anderson Tate & Carr firm took the lead role in representing Mielcuszny at a global mediation of all claims. Mielcuszny, Hanson and Kubiak successfully resolved to dismiss all pending litigation. Hanson and Kubiak waived enforcement of all rights under the 2011 summary judgment order. Judgments against Mielcuszny were vacated and the cases were dismissed.

- Defendants refuse to pay Polsinelli for legal services requested and provided to Defendants by Polsinelli.

(a) **The legal issues to be tried are as follows:**

    (i) Whether there was an attorney-client relationship between the

        Parties pursuant to which Polsinelli provided legal services to Defendants?

(ii) Whether there is a contractual relationship between the Parties pursuant to which Polsinelli is entitled to receive payment from Defendants for legal services provided to Defendants?

(iii) Whether Polsinelli, under the concept of quantum meruit, is entitled to receive payment from Defendants for legal services provided to Defendants?

(iv) Whether Defendants can show that Polsinelli breached a duty of care owed to Defendants arising out of the attorney-client relationship?

(v) Whether Defendants can show that they suffered a loss?

(vi) Whether Defendants can show that the loss they allegedly suffered was proximately caused by Polsinelli's breach of a duty of care owed to Defendants arising out of the attorney-client relationship?

(vii) Whether Defendants counterclaims are time-barred by applicable statutes of limitation?

(viii) Whether there are intervening, superseding causes that

>>foreclose Defendants legal malpractice counterclaims against Polsinelli?

(2) Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.

- *Bell Atlantic Corp. v. Twombly*, 550 US 544, 547, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 556 US 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) [the failure of the counterclaims to allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss.]

- O.C.G.A. § 9-11-9.1 [Defendants' failure to file the necessary professional malpractice affidavit in conjunction with Defendants' counterclaims.]

- O.C.G.A. §§ 9-3-33 and 9-3-25 [Defendants' legal malpractice claims, having accurred in June 2008, are time barred.]

- *Oehlerich v. Llewellyn*, 285 Ga. App. 738(2), 647 SE 2d 399 (2007) [Defendants' breach of fiduciary duty claims are based on the same operative facts as Defendants' legal malpractice claims and are therefore improperly duplicative.]

- *Bonard v. Lowe's Home Centers, Inc.*, 224 Ga. App. 85, 86. 479 SE 2d 784, 787 (1996) [ Sellers' misrepresentations to CKM and Polsinelli were superseding causes, breaking the chain of causation regarding the business acquisition legal malpractice claims.

- O.C.G.A. § 51-1-8 [Defendants' in-judicio representation that they withheld a portion of the purchase price reflective of the anticipated value of the two 15,000 liter tanks and the facilities' ability to house on-site construction, all in conjunction with Defendants' disclosure of a successful mediated resolution of all litigation confesses the absence of any damages to Defendants resulting from the business acquisition or the post-acquisition litigation.]

- *Tante v. Herring*, 264 Ga. 694(1), 453 SE 2d 686 (1994) [Defendants' counterclaims allege no necessary specific instances of legal malpractice by Polsinelli in the post-acquisition litigation.]

- *Griffin v. Fowler*, 260 Ga. App. 443(3), 579 SE 2d 843 (2003) [Defendants' counterclaims alleging that Polsinelli's legal fees are "excessive" state no cause of action.]

- O.C.G.A. § 13-1-1 *et seq*. [Contracts].

- O.C.G.A. § 9-2-7 [Quantum Meriut].

(3)  Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A.)

(4)  Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Responses to Initial Disclosures as Attachment B.)

(5)  Provide a copy of, or a description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)

(6)  In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under Fed. R. Civ. P. 34. (Attach any copies and

descriptions to Initial Disclosures as Attachment D.)

- Defendants owe Polsinelli approximately $333,003.20 plus interest.

(7) Attach for inspection and copying as under Fed. R. Civ. P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)

(8) Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiffs' cause of action and state the basis and extent of such interest.

- None

Respectfully submitted, this 25th day of July, 2014.

**POLSINELLI PC**  
1355 Peachtree Street, N.E., Suite 500  
Atlanta, Georgia 30309-3232  
Telephone: (404) 253-6000  
Facsimile: (404) 253-6060  

*s/ William B. Hill, Jr.*  
William B. Hill, Jr. Esq.  
Georgia Bar No. 354725  
*wbhill@polsinelli.com*  
Nancy E. Rafuse, Esq.  
Georgia Bar No. 621717  
*nrafuse@polsinelli.com*  

Counsel for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| POLSINELLI PC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CASE NO. 1:14-CV-0873-SCJ |
| GENESIS BIOSCIENCES, INC. | ) |
| and CKM HOLDINGS, INC., | ) |
| | ) |
| Defendants. | ) |

## **CERTIFICATION OF COMPLIANCE**

I hereby certify that, pursuant to Local Rule 7.1D, the foregoing PLAINTIFF'S INITIAL DISCLOSURES has been prepared in Times New Roman, 14-point font, in conformance with Local Rule 5.1C.

*s/ William B. Hill, Jr.*
Counsel for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| POLSINELLI PC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CASE NO. 1:14-CV-0873-SCJ |
| GENESIS BIOSCIENCES, INC. | ) |
| and CKM HOLDINGS, INC., | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I certify that, on July 25, 2014, the foregoing PLAINTIFF'S INITIAL DISCLOSURES was filed with the Court using the CM/ECF system, which shall send electronic notification of the same to the following counsel of record:

| | |
|---|---|
| Alexa Ross, Esq. | Nancy Temple |
| Richard Robbins, Esq. | Kallen & Temple LLP |
| Robbins Ross Alloy Belinfante | Suite 1310 |
| Littlefield, LLC | 542 Dearborn |
| Suite 1120 | Chicago, IL 60605 |
| 999 Peachtree St., NE | |
| Atlanta ,GA 30309 | |
| rrobins@robinsfirm.com | |

*s/ William B. Hill, Jr.*
Counsel for Plaintiff